UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Gary M. Brigman,                                              Case No. 3:13-cv-00174

        Plaintiff

v.                                                            ORDER

CSX Transportation, Inc.,

        Defendant

## I.  INTRODUCTION

Before me are the motions of Defendant CSX Transportation, Inc. ("CSXT") and Plaintiff Gary Brigman for summary judgment. The parties have completed briefing on both motions. In his reply brief to CSXT's brief in opposition to his summary judgment motion, Brigman requested to withdraw his motion for summary judgment. That request is granted, and the motion will be treated as withdrawn. For the reasons stated below, CSXT's summary judgment motion is granted.

## II.  BACKGROUND

On July 11, 2010, Brigman, a CSXT conductor, and Randall Cook, a CSXT engineer, were working on a coal train traveling from Garrett, Indiana to Cleveland, Ohio. Brigman traveled east from Garrett to various cities in Ohio on approximately 15 percent of his work assignments. (Doc. No. 40 at 14). Each of these trips carried Brigman through Defiance, Ohio and across Tittle Road, a rural road passing through farmland near Defiance. (Doc. No. 40 at 23; Doc. No. 38-9; Doc. No. 48-3 at 1). Brigman and Cook approached the Tittle Road crossing at approximately 1:50 p.m., when they saw a pickup truck heading southbound toward the railroad tracks. The Tittle Road crossing was equipped with crossbuck signs but did not have flashing lights or gates. (Doc. No. 40

at 23). Both Brigman and Cook had mistaken the Tittle Road crossing as a private farmer's crossing, at which they were not required to sound the locomotive's horn, instead of a public crossing, at which they were required to do so. Just before the crossing, Brigman and Cook realized the pickup truck driver was looking off in the opposite direction and was not slowing down for the crossing. Cook sounded the horn to attempt to warn the driver, but was not successful. The train collided with the vehicle, and the driver of the pickup truck was killed. CSXT terminated Brigman and Cook's employment for violating federal regulations and CSXT's operating rules, though Brigman was reinstated following an appeal to a Public Law Board. Brigman was diagnosed with post-traumatic stress disorder ("PTSD") following the accident and seeks damages under the Federal Employers' Liability Act ("FELA") and Ohio law.

### III.   STANDARD

A court may grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The court's role is not to weigh the evidence presented, but to determine whether that evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 249, 251-52. The court also must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Vol. 11 *Moore's Fed. Practice*, §56.40[1][b][iii] (Matthew Bender 3d ed.) ("If the moving party does not bear the burden of persuasion at trial on the claim . . . the movant need not produce evidence that conclusively establishes the controlling facts in its favor . . . ."). If the movant meets this burden, the nonmoving party must identify "sufficient evidence . . . for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

2

## IV.  ANALYSIS

CSXT and Brigman both filed motions for summary judgment.  CSXT seeks summary judgment on all issues, (Doc. No. 36), and Brigman seeks summary judgment on the issue of liability.  (Doc. No. 37).  Following CSXT's submission of its brief in opposition to Brigman's motion, however, Brigman conceded CSXT produced evidence sufficient to defeat his motion and purported to withdraw his summary judgment motion.  (Doc. No. 58 at 3).  CSXT has not objected to Brigman's request to withdraw his motion.  Brigman's request to withdraw his summary judgment motion is granted.

Brigman asserts CSXT is liable for the injuries he suffered because CSXT violated federal and state law in failing to maintain whistle posts and road crossing signs – known as crossbucks – at the Tittle Road crossing.  CSXT argues: (1) Brigman may not recover under the FELA because his PTSD was not caused by fear for his own safety; (2) it had no duty to maintain whistle posts; (3) even if CSXT had such a duty, it did not have notice one of the whistle posts had fallen; (4) the accident was not caused by a fallen whistle post; and (5) the Tittle Road crossbucks were maintained in compliance with federal regulations.

CSXT argues Brigman cannot recover damages because he fails to present expert evidence to establish that his PTSD was caused by his fear for his personal safety as a result of the collision. (Doc. No. 36 at 10-14).  Brigman asserts he is not required to present expert evidence to substantiate the connection between his condition and the accident, and that the correlation between the occurrence of the accident and the onset of his condition at least creates a genuine issue of material fact.  (Doc. No. 54 at 17-21).  I need not resolve this dispute.  Even assuming Brigman presents a cognizable injury, I conclude he fails to present evidence sufficient to support the conclusion CSXT was negligent or that its negligence caused his injuries.

3

A. **WHISTLE POSTS**

The FELA permits railroad employees to recover damages from a railroad company if the employee is injured during the course of his employment as a result of negligence attributable to the railroad. 45 U.S.C. § 51. Plaintiffs may establish the railroad's liability in one of two ways. A plaintiff may establish negligence per se by showing the railroad violated a statute which imposed an "absolute duty" on the company. *Borger v. CSX Transp., Inc.*, 571 F.3d 559, 563 (6th Cir. 2009). A plaintiff also may establish the railroad's liability "by proving the 'traditional common law elements of negligence: duty, breach, foreseeability, and causation.'" *Id.* (quoting *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir. 1990)). A railroad's breach of its duty may be found to have caused the plaintiff's injury if the railroad's negligence played any part in bringing about the injury. *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2644 (2011). Railroads have a statutory duty to provide their employees with a reasonable safe workplace and to exercise ordinary care to protect their employees from foreseeable risks. *Aparicio v. Norfolk & W. Ry. Co.*, 84 F.3d 803, 810 (6th Cir. 1996).

Prior to 2006, state law dictated the placement of whistle posts at varying distances from crossings. (Doc. No. 46 at 17-18). Since September 2006, locomotive engineers have been required to sound the locomotive horn for at least 15 seconds, and no more than 20 seconds, prior to entering a crossing. 49 C.F.R. § 222.21(b)(2). As CSXT notes, there is no federal statute or regulation requiring railroads to erect or maintain whistle post signs near railroad crossings, and thus CSXT could not be found liable on a theory of negligence per se.

Prior to the implementation of this regulation, Brigman asserts, "the railroad industry standard [was] to erect and maintain whistle post signs one-quarter mile in advance of all highway-rail crossings where the use of the locomotive horn is required." (Doc. No. 54-7 at 2). In 2010, CSXT policy continued to provide for the placement of whistle post signs one-quarter mile from public crossings. (Doc. No. 54-3). Brigman testified a whistle post sign normally would be placed on the engineer's side of the train, or the right side of the tracks as the train approached a crossing.

4

(Doc. No. 40 at 34). Brigman, as conductor, was on the left side of the train. (Id.). He did not recall seeing a whistle post as the train approached the Tittle Road crossing. (Id. at 69). CSXT concedes the engineer's side whistle post was not standing at the time of the accident. (Doc. No. 54-4 at 1). While the whistle post on the engineer's side of the tracks was not upright as Brigman and Cook approached the Tittle Road crossing, there was a whistle post sign off to the conductor's side. (Doc. No. 48 at 18; Doc. No. 48-6).

Brigman argues CSXT breached its duty to maintain a reasonably safe work environment because it did not ensure there was an upright whistle post in the location dictated by its policy, leading him to believe the Tittle Road crossing was a private crossing at which the crew was not required to sound the train horn. Brigman, however, does not challenge CSXT's characterization of the whistle posts as reference points, akin to landmarks such as trees or houses. (*See* Doc. No. 36 at 15; Doc. No. 46 at 33). Nor does he dispute CSXT's assertion that Federal Railroad Administration ("FRA") regulations require the locomotive crew sound the horn at varying distances based on the speed at which the locomotive travels, and make no reference to whistle posts. *See* 49 C.F.R. § 222.21(b). Additionally, Brigman admits he was familiar with the area, as he had traveled across the Tittle Road crossing on approximately 15 percent of his job assignments since 2005. (Doc. No. 40 at 15-16, 23).

While it is not at all clear CSXT's duty to provide a reasonably safe workplace requires it to place and maintain whistle posts near public rail crossings, there is no evidence CSXT knew, or should have known through the exercise of ordinary care, that the whistle post on the engineer's side of the train had fallen. Notice under the FELA may be actual or constructive, and may be shown through facts supporting an inference "the defect could have been discovered by the exercise of reasonable care or inspection." *Szekeres v. CSX Transp., Inc.*, 617 F.3d 424, 430-31 (6th Cir. 2010). While Brigman offers evidence that CSXT employees using the Tittle Road crossing after the

5

collision noticed the whistle post was not upright, (Doc. No. 53-2), there is no evidence of similar reports prior to the accident and thus no record evidence indicating when the whistle post fell.

As a result, Brigman's assertion CSXT should have known the whistle post was not upright because one or more CSXT trains traveled that route on July 11, 2010, is speculative and does not create a genuine dispute of material fact. In order for a jury to conclude, based on this argument, that CSXT breached its alleged duty to maintain the whistle post, the jury would have to impose on CSXT not only a near-constant duty to monitor all of its signs and signals, including those which federal law does not mandate, but also a near-immediate responsibility to repair or replace a noncompliant item. In effect, this would create a cause of action in strict liability rather than in negligence. *See Miller v. Cincinnati, N. O. & T. P. Ry. Co.*, 317 F.2d 693, 695 (6th Cir. 1963) ("Under familiar law, defendant could not be convicted of negligence, absent proof that such defect was known, or should or could have been known, by defendant, with opportunity to correct it.").

Further, Brigman's contention CSXT must present affirmative evidence that it had no reason to know the post had fallen is inconsistent with CSXT's burden under Rule 56(c). CSXT has noted the absence of evidence to support an element of the claim on which Brigman will bear the burden of proof at trial. *Celotex*, 477 U.S. at 325. CSXT is entitled to summary judgment because Brigman fails to respond with any evidence to establish a genuine dispute on this issue. *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986) (nonmovant "is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint.").

B. CROSSBUCKS

CSXT is entitled to summary judgment as to Brigman's claim the Tittle Road crossbucks were not well maintained in violation of 49 C.F.R. § 234.245 and did not comply with Ohio law. The record includes photographs of the crossbucks on both sides of the crossing. (Doc. No. 38-9 and 38-10). After some initial confusion, Brigman now concedes the crossbuck captured in Doc.

No. 38-10 is the crossbuck which faces in the direction from which the pickup truck approached. Though Brigman refers to both crossbucks as "dilapidated," he fails to offer any evidence from which a jury could conclude CSXT failed to maintain the southbound-facing crossbuck.  (Doc. No. 58 at 3).  To the extent Brigman implies CSXT should be found liable because it failed to maintain the northbound-facing crossbuck, no reasonable juror could conclude that crossbuck played any part in the accident.

CSXT presents evidence the Tittle Road crossbucks were installed using federal funds through the Ohio Buckeye Crossbuck Program.  (Doc. No. 36-1).  Therefore, Brigman's claim that CSXT was negligent because the crossbucks at the railway crossing do not comply with Ohio law is preempted by the Federal Railroad Safety Act ("FRSA").  *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 562-63 (6th Cir. 2006) ("[F]ederal funding plus installation of a crossbuck is all that is necessary for preemption under the FRSA." (citing *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 354-56 (2000))).

## V. CONCLUSION

For the reasons stated above, CSXT's motion for summary judgment, (Doc. No. 36), is granted.  Brigman's request to withdraw his motion for summary judgment, (Doc. No. 37), also is granted.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge